IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Respondent, | § | |
| | § | Case No. 4:15-CR-515 |
| v. | § | |
| | § | Case No. 4:19-CV-1117 |
| DANIEL NATHAN WEST | § | |
|     Petitioner. | § | |

## RESPONSE TO MOTION FOR RELIEF UNDER 28 U.S.C. § 2255 and MOTION FOR JUDGMENT ON THE RECORD

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, by and through the United States Attorney for the Southern District of Texas, files this Response to Daniel Nathan West (West)'s Motion for Relief under 28 U.S.C. § 2255 (DE-113, 114)[1], and Motion for Judgment on the Record. In support thereof, the United States would show the Court the following:

## I.

## GENERAL DENIAL

The United States denies every allegation of fact made by West, except those supported by the record and specifically admitted herein,

---

[1] "DE refers to the district clerk's docket entries in Case No. 4:15-CR-515.

and demands strict proof thereof.

## II.

## <u>COURSE OF PROCEEDINGS: FINALITY and TIMELINESS</u>

On September 15, 2016, West pleaded guilty to the charge of wire fraud, a violation of 18 U.S.C. § 1343. This Court imposed West's sentence on March 12, 2018: The Court remanded West into the custody of the Bureau of Prisons to serve 108 months' imprisonment to be followed by 3 years' supervised release. The Court ordered West to pay the mandatory assessment of $100 and restitution in the amount of $3,561,166.11. (DE-51, 90, 91). The district clerk entered the Judgment of Conviction and Sentence on March 13, 2018. (DE-90).

West did not appeal, thus his judgment became final on March 27, 2018, the last day on which West could have filed a timely notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i), *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).

West avers that he deposited his motion for relief under 28 U.S.C. § 2255 on March 25, 2019. (DE-114, p. 8). West filed his motion within the one-year statute of limitations prescribed under 28 U.S.C. § 2255(f)(1). West's motion is timely.

2

## III.

## <u>GROUNDS FOR RELIEF: JURISDICTION</u>

In his motion for relief under 28 U.S.C. § 2255, West advances the

following ground for relief:

> West contends that his attorney at sentencing, Mr. Ali Fazel,
> abrogated West's right to the effective assistance of counsel at
> sentencing by inadequately objecting to the facts underlying
> the Court's computation of West's guideline sentence.

(DE-114, pp. 8-9).

Under 28 U.S.C. § 2255, a defendant may move to vacate, set aside

or correct his sentence if:

> (1)    The sentence was imposed in violation of the
> Constitution or the laws of the United States,
>
> (2)    The district court was without jurisdiction to impose the
> sentence,
>
> (3)    The sentence imposed was in excess of the maximum
> authorized by law, or
>
> (4)    The sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). The nature of the collateral challenge is extremely

limited, being reserved for instances of constitutional or jurisdictional

magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If

the error is not of constitutional magnitude, the movant must show that

the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). Because West couches one part of his complaint in terms of the abrogation of his Sixth Amendment right to the effective assistance of counsel, he raises an issue of constitutional magnitude vesting this court with jurisdiction under 28 U.S.C. § 2255(a) and 28 U.S.C. § 1331.

## IV.

## STATEMENT OF THE CASE

### A.   West Pleads Guilty

On September 15, 2016, West, accompanied by his court-appointed attorney, Mr. Tom Berg, announced his intention to plead guilty to the charge of wire fraud under the provisions of a plea agreement. (DE-121, p. 2). The Court placed West under oath and admonished him regarding the penalties of making false statements in response to the Court's queries. (DE-121, pp. 2-3). After West acknowledged his understanding of that admonishment, the Court engaged him in the colloquy mandated by Rule 11 of the Federal Rules of Criminal Procedure. (DE-121, p.3).

4

West assured the Court that he was mentally and physically able to enter a guilty plea. He advised the Court that he was entering his guilty plea voluntarily and that he had availed himself of the assistance of counsel. West assured the Court that he was satisfied with counsel's efforts in his behalf. (DE-121, p. 4). West's attorney told the judge that he had adequate time to consult with West and believed that West understood the nature of the charges lodged against him and the consequences of pleading guilty. (DE-121, p. 4).

Next, the Court advised West of the constitutional rights a criminal defendant enjoyed under the United States Constitution. (DE-121, p. 5). The judge explained that if West persisted in his plea of guilty, he would waive all of these rights. West declared that he understood this admonishment. (DE-121, pp. 5-6).

Thereafter, the Court admonished West of the consequences of pleading guilty. The Court told West a finding of guilt would result in the forfeiture of his rights to vote, to hold public office, to serve on a jury, and to possess a firearm. The Court outlined the United States' burden of proof in a criminal trial and the elements of the offense of wire fraud. The judge told West he would be subject to a maximum sentence of 20 years'

imprisonment that would be followed by a term of supervised release. (DE-121, pp. 6-7). West confirmed his understanding of these admonishments and his intent to plead guilty. (DE-121, p. 7).

The Court asked the United States to offer a summary of the evidence it would have offered at trial to sustain a finding of guilt:

> As contained in the plea agreement on Pages 8 and 9, if this case were to proceed to trial, the United States would show that in or near the middle of 1999, Defendant Daniel Nathan West began working for Airis International Holdings as its treasurer and chief financial officer. As the treasurer and chief financial officer for Airis, Mr. West was responsible for all of the financial affairs of Airis.

> In the year 2005, Mr. West left his employment with Airis to start his own accounting services company called "Westtree Financial" in the State of Georgia.

> Also in 2005, Mr. West, through his company Westtree Financial, entered a contract with Airis to provide accounting services to Airis.

> From the year 2005 to the year 2012, Mr. West created and engaged in a scheme to defraud Airis using bank wires to unlawfully transfer monies from the bank accounts of Airis in Houston, Texas, to the bank accounts of Westtree Financial Services in the State of Georgia.

> As an example, as alleged in Count 1 of the Indictment, on or about March 3rd, 2011, Mr. West caused $70,000 to be transferred from the bank account of Airis with the Bank of Texas here in Houston, Texas, to the bank account of Westtree Financial with Wachovia Bank in Johns Creek, Georgia, using

interstate wires without the knowledge, consent, or permission of Airis.

(DE-121, pp. 8-9). After West confirmed the verity of the prosecutor's summary of the offense conduct, the Court pointedly asked West and his attorney if the other facts contained in the plea agreement were also true save for subparagraph (f) which the parties had redacted by agreement. (DE-121, p.9; DE-52, p. 9). West and his attorney confirmed the accuracy of the provisions of the plea agreement that the prosecutor did not address in the United States' open court summary. (DE-121, pp. 9-10). West thus confessed to the accuracy of this provision of the plea agreement:

(d) This investigation has revealed that between August 2005 and December 2012, West stole $3,616,563.45, by transferring or using funds belonging to Airis without the knowledge or consent of Airis. West used stolen funds for personal expenses, to operate his accounting firm, Westtree Financial, and to finance his real estate investments. Between August 2005 and December 2012, West unlawfully transferred funds from Airis on numerous occasions, causing a financial loss to Airis of $3,616,563.45.

(DE-52, p. 9, *see also* PSR ¶¶ 6-14, 22)[2].

---

[2] "PSR" refers to the presentence investigation report.

After West acknowledged the accuracy of the United States' summary of the facts that would support a finding of guilt and counsel declared there was no reason why West should not enter his plea, West pleaded guilty to the single count of wire fraud. (DE-121, p. 10). The prosecutor summarized the provisions of the plea agreement including West's promise to pay $3,616,563.45 in restitution. (DE-121, pp. 8-11). Once the parties had signed the Plea Agreement, the Court found West guilty, ordered the preparation of a presentence investigation report (PSR), and set the case for sentencing. (DE-121, p. 17).

## B.  <u>PSR: calculation of West's guideline sentence</u>

The probation officer recommended that West's advisory guideline sentence be computed from a base offense level of 7, citing U.S.S.G. § 2B1.1(a)(1). (PSR ¶ 21). Because the offense involved an amount of loss greater than $3,500,000 and less than $9,500,000, U.S.S.G. § 2B1.1(b)(1)(J), the probation officer added 18 levels to the base offense level. The probation officer added four more levels to the adjusted offense level because West employed sophisticated means to commit the offense, U.S.S.G. § 2B1.1(b)(10)(C), and he abused a position of trust or used a special skill to facilitate the commission of the offense, U.S.S.G. § 3B1.3.

8

(PSR ¶¶ 22, 23, 25). Because West violated the terms of his bond by traveling outside the Court's jurisdiction without first securing the Court's permission, the probation officer did not recommend an adjustment for acceptance of responsibility. (PSR ¶ 28). Thus, West's total adjusted offense level proved to be 29. (PSR ¶¶ 29, 31).

West did not have any prior criminal convictions giving him a criminal history score of "zero". A "zero" criminal history score established criminal history category I. (PSR ¶ 34). The probation officer noted that the statutory maximum term of imprisonment was 20 years. (PSR ¶ 54). With a total offense level of 29 and a criminal history category of I, West was subject to an advisory guideline imprisonment range of 87 to 108 months. (PSR ¶ 55).

On February 16, 2017, before the Court imposed his sentence, West's attorney filed objections to the recommendations of the PSR. (DE-83). West, through his attorney, objected to the adjustment recommended for the use of sophisticated means to commit the offense (PSR ¶ 23) and to the probation officer's recommendation that West not receive credit for acceptance of responsibility due to his violations of the conditions of his release on bond (PSR ¶ 28). Counsel also objected to the probation

officer's recommendation regarding the amount of loss involved in the offense and the corresponding amount of restitution notwithstanding West's sworn admission that the offense involved an amount of loss totaling $3,616,563.45 (PSR ¶¶ 13, 14; DE-121, pp. 9-10; DE-52, p. 9).

## C.   <u>Sentencing</u>

The Court opened the sentencing proceeding with a discussion regarding the amount of loss subject to forfeiture (DE-96, pp. 5-35). After the Court had received the parties' argument on the amount of loss, West, through his attorney, addressed two additional objections: the use of sophisticated means to facilitate commission of the offense and the denial of any reduction for acceptance of responsibility. (DE-96, pp. 35-36). Citing the pleadings, the Court overruled the last two objections. (DE-96, p. 37). With respect to the amount of loss caused by the offense, the Court sustained those objections in part and denied them in part. The judge's decision to grant the objections in part reduced the amount of loss subject to restitution to $3,561,166.11. This reduction did not affect the 18-level

adjustment to the base offense level. (Addendum to the PSR, p. 7; DE-96, p. 38).[3] West's total offense level remained 29 (DE-96, p.38).

During his argument in support of mitigation, West's attorney pressed for a three-level reduction for acceptance of responsibility. Counsel began with an explanation for West's decision to travel outside the jurisdiction without first securing the Court's permission. Counsel averred that West was not obstructing or impeding the administration of justice: part of the travel, counsel related, was to secure funds for restitution and part of the travel was for vacation. (DE-96, pp. 43-45). Counsel urged the Court to impose a sentence of 46 months' imprisonment – 41 months below the applicable guideline range. (DE-45).[4]

The United States began its statement by reading an email exchange between West and the owner of Airis into the record. The

---

[3] At sentencing, counsel advanced eight objections to the amount of loss. These objections, if sustained in their entirety, totaled $232,905, resulting in an adjusted amount of loss of $3,383,658, and a two-level reduction in the total offense level, U.S.S.G. § 2B1.1(b)(1)(I).

[4] A 46-month term of imprisonment would reflect a sentence at the low end of a total offense level of 23 (46 to 57 months). If the Court awarded the three-level reduction for acceptance of responsibility, the applicable imprisonment range would have been 63 to 78 months' imprisonment (total offense level of 26).

prosecutor averred that this illustrated the callousness of West's intent and the scope of his deceit. (DE-96, pp. 46-47). The United States met defense counsel's argument with regard to acceptance of responsibility by citing a letter from the United States Probation Office for the Northern District of Georgia relating that West lied about traveling without permission. (DE-96, pp. 48-49). The prosecutor urged the Court to impose a sentence "at the high end of the punishment range." The Court promptly observed that this recommendation indicated that the government believed West had breached the plea agreement forfeiting his right to a recommendation for an adjustment for acceptance of responsibility and to a recommendation for a sentence at the low end of the guideline range. (DE-96, p. 50; DE-52, p. 5).

West, in his allocution, briefly responded to the United States' contention that his conduct belied an adjustment for acceptance of responsibility. (DE-96, p. 52). After briefly responding to the bookkeeping allegations (DE-96, p. 52), West offered his statement in mitigation of punishment. He opened with apologies to his family and to the owner of Airis. He summarized his attempt to earn money toward payment of restitution while incarcerated. He asked the Court to impose a low term

12

of imprisonment so that he could return to work and pay down the order of restitution. (DE-96, p. 53-55).

Thereafter, the Court engaged West in a discussion regarding the violations of West's conditions of release. This colloquy continued with a discussion regarding how West proposed to make restitution payments including a reference as to how he used sophisticated means to facilitate the commission of the fraud. (DE-96, pp. 57-62).

At the end of this colloquy, the Court pointedly found that the amount of loss subject to restitution was $3,561,166.11. (DE-96, p. 62). Citing the seriousness of the offense and the extent of the damage done to the owner of Airis and his employees, the Court remanded West into the custody of the Bureau of Prisons to serve 108 months' imprisonment – the top of the guideline range. (DE-96, p. 65). The Court advised West that he had a right to appeal. The Court explained that the government had deemed the plea agreement breached, freeing West from his waiver of the right to appeal his conviction and sentence. The Court advised West of the time limits for perfecting an appeal. (DE-96, pp. 68-69). West did not appeal.

# V.

## AUTHORITIES FOR DENYING RELIEF ON THE RECORD

### A.   Grounds for relief restated

In his motion for relief under 28 U.S.C. § 2255, West contends that his attorney, Mr. Ali Fazel, abrogated his right to the effective assistance of counsel at sentencing by failing to advance evidence that would have reduced the amount of loss to a sum more than $1,500,000 but less than $3,500,000, U.S.S.G. § 2B1.1(b)(1)(I). (DE-114, p. 8). West avers that he provided his attorney evidence that would have reduced the amount of loss by $750,000. He avers that the government based the amount of loss on the testimony of an "expert," Ann Dykes, the controller of Airis who once worked for West. (DE-114, pp. 8-9). West faults his attorney for failing to summon court-paid expert witnesses to testify in his behalf to overturn the United States' calculation of the amount of loss. Notwithstanding, West's contention to the contrary, the record demonstrates that counsel's conduct of the defense was zealous and reasonable precluding relief for ineffective assistance of counsel.

**B.**   **Standards for assessing claims of ineffective assistance of counsel**

    **1.**   **General principles**

West predicates his assertion of ineffective assistance of counsel on two propositions: (1) his attorney failed to conduct an adequate investigation into matters germane to the calculation of his sentence and (2) his attorney allegedly labored under "an irreconcilable" conflict of interest. (DE-114, p. 19). To secure relief on the ground that his attorney abrogated his Sixth Amendment right to the effective assistance of counsel, West must satisfy the standard propounded by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland,* this Court's analysis proceeds in two steps: (1) the court determines whether counsel's performance fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (citing *Padilla v. Kentucky*, 559 U.S. 356, 355 (2010) (quoting *Strickland*, at 688, 694)), *United States v. Bolton*, 908 F.3d 75, 99 (5th Cir. 2018), *United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014).

The first prong in the analysis, constitutional deficiency, is linked to the practices and expectations of the legal community. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Hinton*, 571 U.S. at 273 (quoting *Padilla*, 559 U.S. at 366 and *Strickland*, 466 U.S. at 688). In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances. *Id*. (quoting *Strickland*, 466 U.S. at 688). "Under *Strickland*, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Id*. at 274. An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance. *Id*. The reviewing court strongly presumes that counsel's performance falls within the wide range of

16

reasonable professional assistance. The court evaluates counsel's performance in light of all the circumstances existing at the time of counsel's conduct. *Bernard*, 762 F.3d at 471.

The second prong of the ineffectiveness analysis entails a demonstration "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. … When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." *Hinton*, 571 U.S. at 274 (quoting *Strickland*, 466 U.S. at 694, 695). Stated otherwise, to establish prejudice, the defendant must show "that his attorney's errors were so serious that they rendered the result of the trial unreliable or the proceeding fundamentally unfair." *Bernard*, 762 F.3d at 471, *see also Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018)

In *Bernard*, the Fifth Circuit, quoting *Harington v. Richter*, 562 U.S. 86, 109-10 (2011), observed:

> Although courts may not indulge "*post hoc* rationalization" for counsel's decision making that contradicts

17

the available evidence of counsel's actions, … neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others, reflects trial tactics rather than "sheer neglect." … After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance not counsel's subjective state of mind.

*Bernard*, 762 F.3d at 471-72.

In *Premo v. Moore*, 562 U.S. 115, 122 (2011), the Court explains that:

[An] ineffective assistance of counsel claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve…. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of material outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence… The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices of common custom…

In *Premo*, the Court concluded that Premo's lawyer's decision not to file a motion to suppress a confession was not deficient because counsel was cognizant of a second confession that could be attested to by two witnesses. *Id.* Counsel's explanation that a motion to suppress would have been futile was reasonable and well within prevailing professional norms. *Id.* at 124.

### 2.   Ineffective assistance of counsel at sentencing

In *Glover v. United States*, 531 U.S. 198, 121 S. Ct. 696 (2001), the Court held that any increase in a sentence stemming from an error that would have been correctable on appeal establishes the prejudice prong of *Strickland*. *Glover* turns largely on an attorney's failure to object to an error of law that affects the calculation of a sentence. *Id.* Such a failure results in prejudice if the alleged error was correctable. *Id; see, e.g., United States v. Carthorne*, 878 F.3d 458, 469 (4th Cir. 2017) (counsel's unfamiliarity with established precedent supports finding of ineffective assistance of counsel at sentencing).  The Court remanded the case for an assessment of the reasonableness of counsel's performance.

In *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), the Fifth Circuit held that *Glover* abrogated its "significantly less harsh test"

19

and replaced it with an "any actual amount of jail time" test. Stated otherwise, the prejudice prong of the *Strickland* standard is satisfied if the petitioner shows that counsel's deficient performance resulted in any amount of prison time above that the petitioner would have received if the forfeited complaint had been advanced at trial or on appeal. *Id*. The Court pointedly noted that the new test applied to the then mandatory federal guideline regime. *Id*. at 438 n. 4. Since *Grammas*, the Supreme Court has held that the mandatory federal sentencing guideline regime is unconstitutional and that the federal sentencing guidelines are advisory. Courts test sentences imposed under the Federal Sentencing Guidelines for "reasonableness."

### 3. <u>Conflict of interest</u>

"The Sixth Amendment right to counsel includes the 'right to representation that is free of any conflict of interest." *United States v. Bolton*, 908 F.3d 75, 99 (5th Cir. 2018) (quoting *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012)), *United States v. Palacios*, No. 17-10376, 2019 WL 2723961 (5th July 1, 2019). In *Bolton*, the Fifth Circuit observes:

> Generally, this court will determine that "a conflict exists
> when defense counsel allows a situation to arise that tempts

> a division in counsel's loyalties. *Id*. "If a defendant chooses to
> proceed with representation by counsel who has a conflict of
> interest, a district court must conduct what is commonly
> known as '*Garcia* hearing'[5] to ensure a valid waiver by the
> defendant of his Sixth Amendment right." *Id*. A district court's
> requirement to conduct a *Garcia* hearing only exists if there
> is an actual conflict of interest and not just a "speculative or
> potential conflict." *Id*. at 618-19.

*Bolton*, at 99. If the defendant successfully establishes an actual conflict

that adversely affected counsel's performance, the prejudice is presumed

without any further inquiry into the effect of the actual conflict on the

outcome of the defendant's trial. *Palacios*, 2019 WL 2723961, *8. Here,

the record is bereft of any evidence that West's attorney labored under

an actual conflict. Indeed, the record is bereft of any evidence that counsel

labored under a potential or speculative conflict of interest.

## C. <u>Application of the standard to the facts in controversy</u>

### 1. <u>Preparation for and representation at sentencing</u>

To support a finding of deficient assistance at sentencing, West

cites the sufficiency of counsel's preparation prior to the sentencing

proceeding. West asserts that his attorney should have secured the

services of a forensic accountant to challenge the amount of loss

---

[5] See *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975).

recommended by the probation officer and he should have brought forward all of the transactions contributing to the amount of loss that West deemed questionable. West's assertion is undermined by a careful review of the record from the time counsel was appointed to the date West's sentence was imposed.

West, with the assistance of a different court-appointed attorney, pleaded guilty on September 15, 2016. (DE-51). The Court scheduled sentencing for December 5, 2016. (DE-53). Less than one month after West entered his plea, October 8, 2016, he and his family traveled to North Carolina with friends. Not quite one month later, on November 4, 2016, the West family traveled to Santa Rosa Beach, Florida, for a vacation. (DE-62, p. 3). In the interim, the Court reset West's sentencing to March 6, 2017. (DE-55).

On January 30, 2017, West's first court-appointed attorney, Mr. Tom Berg, filed a motion to withdraw because he had accepted an invitation to become the First Assistant District Attorney for the newly elected District Attorney of Harris County, Texas. (DE-56). The Court granted this motion and ordered the magistrate judge to appoint new

22

counsel. (DE-57). On January 31, 2017, the magistrate judge appointed Mr. Ali Fazel to represent West at sentencing. (DE-58).

From the beginning of his representation of West, Mr. Fazel knew that West had pleaded guilty and had confessed to an amount of loss totaling $3,616,543.15. (PSR ¶¶ 10, 13, 14; DE-52, p. 9; DE-121, pp. 9-10). Shortly after his appointment, Mr. Fazel filed a motion to continue West's sentencing. (DE-59). The Court granted this motion and reset the sentencing to June 5, 2017. (DE-60).

On February 21, 2017, the United States moved for a continuance. (DE-61). The Court granted the United States motion on March 3, 2017 (DE-63) – the same day the United States filed its motion to revoke West's release (DE-62). On March 8, 2017, the Court set the matter for a hearing. (DE-65). The Court, having found that West violated the conditions of his release by leaving the jurisdiction of the Court without permission, revoked West's bond and remanded West into custody on March 13, 2017. (DE-67). Counsel thus, in addition to the amount of loss and restitution, had an additional to address – the potential denial of a three-level reduction for acceptance of responsibility.

On May 18, 2017, West filed a motion to continue sentencing so that counsel could assist West's family in securing documentation that would facilitate payment of restitution. (DE-69). The Court granted this motion and reset sentencing to October 23, 2017. (DE-70). On October 3, 2017, West again moved for a continuance which the Court granted on October 4, 2017. The Court reset the imposition of sentencing to January 29, 2018. (DE-74).

On January 12, 2018, West filed an opposed motion for continuance. West, through counsel, explained that West and counsel needed additional time to complete the acquisition of records that would facilitate counsel's preparation of objections to the PSR and would support a reduction in the amount of loss and restitution. (DE-78). The Court granted West's motion and reset sentencing to February 26, 2018. (DE-79). On January 31, 2018, the United States filed an unopposed motion for a continuance (DE-81); the Court granted this motion on January 31, 2018 (DE-82).

On February 23, 2018, West's attorney secured an order granting West leave to file objections to the PSR out-of-time. (DE-85). The United

States duly filed its response to West's objections and the probation office submitted the final PSR on March 7, 2018. (DE-86, 87, 88).

The record belies West's contention that his court-appointed attorney inadequately investigated the issues affecting the imposition of his sentence. At the outset, counsel had to overcome West's sworn, on-the-record affirmation that he caused an amount of loss totaling $3,616,563.45. West's guilty plea waived all non-jurisdictional defects in the proceedings. Solemn open-court declarations carry a strong presumption of verity. *Palacios*, 2019 WL 2723961 *8 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Ordinarily, a defendant will not be heard to refute testimony given at a plea hearing while under oath. *Id.* *9-10 (citing *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)). Here, West admitted that he effectively defrauded Airis out of $3,616,563.45, thereby establishing the amount of loss on which the probation officer would compute his sentence.

Notwithstanding this sworn admission and West's imprisonment following the revocation of his bond, counsel filed an objection to the amount of loss and restitution based on eight ledger entries identified by West. The total amount of the sums West and his attorney deemed

wrongly attributed to the amount of loss was approximately $232,905. (Addendum to the PSR, p. 6). If the Court had granted all of these objections, the amount of loss and restitution would have been reduced to an amount below $3,500,000 and would have resulted in the deduction of two levels from the adjusted offense level under the authority of U.S.S.G. § 2B1.1(b)(1)(I). Unfortunately, the Court, after a lengthy examination of the objections at sentencing (DE-96, pp. 8-63), overruled all but three of West's objections.

The difficulty counsel encountered in attempting to secure relief on these objections arises in part on the fact that West "had created a fictitious ledger showing $3,757,126 being held in cash in Airis' Bank of Texas accounts however, those bank accounts were effectively empty due to theft by [West]. [West] had fraudulently created the ledger to conceal the theft from Airis." (PSR ¶ 11; DE-96, p. 19). During the course of the Court's consideration of West's objections, the prosecutor pointedly noted that West not only deceived the independent accounting firm of Harshman Phillips, but he also deceived his bookkeeper Ann Dykes. West suggests that Ms. Dykes was an "expert" on whom the government relied to establish the amount of loss. West is mistaken: Ms.

Dykes is a fact witness who would have attested to the bookkeeping entries she made on West's instructions. Inferentially, Ms. Dykes would have attested to the fact that many of these entries were designed to conceal the fraud. (DE-96, pp. 19-20).

Indeed, West's influence on the bookkeeping constituted the gravamen of the United States' opposition to West's objections. When the Court pointedly asked the prosecutor whether West could establish the accuracy of the records underlying his objections, the prosecutor noted that West could not satisfy his burden of demonstrating the error in the recommended amount of loss. The prosecutor observed that execution of the scheme to defraud required the preparation of false accounting entries, and West was relying on those ostensibly false entries to reduce his sentencing exposure. (DE-96, p. 21). The record reflects that the prosecutor suggested an alternative course for West:

> What he could have done, which I have seen done in other cases, is to hire an outside accountant, an independent accountant or CPA or accounting firm, to review all of these records and provide an independent report to the Court. Instead, what Mr. West did is he did his own analysis, and it's because of his misconduct in doing accounting procedures and analyses that bring us here today.

(DE-96, p. 21). West seizes upon this observation regarding counsel's decision not to hire a forensic accountant to support his complaint of deficient conduct of the defense at sentencing.

The decision not to retain an outside accountant or to offer additional ledger entries to support a reduction in the amount of loss is a strategic choice that is virtually unchallengeable:

> Defense counsel's "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). A court reviewing those choices is required "not simply to give counsel the benefit of the doubt … but to affirmatively entertain the range of possible reasons [he] may have had for proceeding as he did." *Feldman v. Thaler*, 695 F.3d 372, 380 (5th Cir. 2012) (quoting *Pinholster*, 131 S. Ct. at 1407) (first brackets added). We have further explained that counsel is afforded leeway where a potential strategy carries "double-edged" consequences. *St. Aubin v. Quarterman*, 470 F.3d 1096, 1103 (5th Cir. 2006). For instance, we have held that " 'a tactical decision not to … present potentially mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance." *Id.* (quoting *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997)); *see also, e.g. Mann v. Scott,* 41 F.3d 968, 984 (5th Cir. 1994) (strategic decisions with "double-edged" consequences are 'granted a heavy measure of deference in a subsequent habeas corpus attack.") (quoting *Wilkerson v. Collins*, 950 F.2d 1054 (5th Cir. 1992)).

*Mejia v. Davis*, 906 F.3d 307, 316 (5th Cir. 2018). Here, counsel could reasonably assess the possibility that an independent accounting firm

could undermine counsel's efforts to reduce the amount of loss involved in the offense by either confirming the probation officer's recommendation or by finding additional loss. Counsel's decision to give this possibility greater weight is objectively reasonable in light of the prosecutor's observation that "Westtree provided accounting services and bookkeeping services to other companies, other individuals. Some of those individuals have filed criminal complaints in the State of Georgia." (DE-96, pp. 21-22). The circumstances underlying the commission of the fraud limited counsel's options. It is undisputed that two sets of books were prepared at West's behest. Counsel selected the transactions he deemed likely to convince the Court to lower the amount of loss and the amount of restitution. Counsel was cognizant of the fact that enlisting the assistance of a forensic accountant carried doubled-edged consequences – the accountant could have confirmed the probation officer's recommendation or could have discovered additional loss.

Viewed in its totality, counsel's performance is objectively reasonable: counsel advanced viable objections to the amount of loss, to the denial of acceptance of responsibility, and to the enhancement for the use of sophisticated means to facilitate the commission of the offense.

29

Moreover, counsel zealously argued for a sentence below the applicable guideline imprisonment range. In light of the record as a whole, West cannot demonstrate that his attorney's effort in his behalf at sentencing was deficient. Because West cannot satisfy the deficient performance prong of the *Strickland* test, this Court should deny relief on this ground.

## 2.   West's representation was conflict free

West attributes his attorney's alleged deficient performance to an irreconcilable conflict of interest. West contends that his attorney failed to appreciate his wisdom and winsome personality. This failure gave rise to an alleged breakdown in communications between attorney and client and disagreement regarding defense strategy and tactics. The record refutes West's contention in law and in fact.

The Fifth and Eleventh Circuits have upheld district court decisions not to appoint substitute counsel based on disagreements with counsel's strategy. *United States v. Rose*, 684 Fed. Appx. 403, 404 (5th Cir. 2017). The Eleventh Circuit explained that substitution of counsel in these circumstances requires a showing of "good cause":

> "Good cause in this context means a fundamental problem, such as a conflict of interest, a complete breakdown in communications or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Garey*, 540 F.3d

30

> 1253, 1263 (11th Cir. 2008) (en banc) (quotation omitted).
> Fields did not show there was a fundamental problem that
> warranted replacement of counsel. *See id*. The only problems
> Fields identified at trial were general assertions about his
> counsel's unwillingness to ask certain questions of witnesses
> and his counsel's attitude toward him. These do not rise to the
> level of "a conflict of interest, a complete breakdown in
> communication or an irreconcilable conflict which leads to an
> apparently unjust verdict." *Id*.

*United States v. Fields*, 625 Fed. Appx. 949, 953 (11th Cir. 2015).

Analogously, West's complaint that his attorney did not personally like him fails to give rise to a level of deficient performance that undermines the reliability of the sentencing proceeding.

In *Perillo v. Johnson*, 205 F.3d 775 (5th Cir. 2000), the Fifth Circuit outlined the issues germane to an assessment of an ineffective assistance of counsel claim grounded on a conflict of interest:

> An "actual conflict" exists when defense counsel is
> compelled to compromise his or her duty of loyalty or zealous
> advocacy to the accused by choosing between or blending the
> divergent or competing interests of a former or current
> client... "Adverse effect" may be established with evidence
> that "some plausible alternative defense strategy or tactic"
> could have been pursued but was not because of the actual
> conflict impairing counsel's performance... Assuming that the
> defendant establishes an actual conflict that adversely
> affected counsel's performance, prejudice is presumed without
> any further inquiry into the effect of the actual conflict on the
> outcome of the defendant's trial... "[U]nconstitutional
> multiple representation is never harmless error." *See Cuyler*,
> 100 S.Ct. at 1719.

31

*Perillo*, 205 F.3d at 781-82 (internal citations omitted). "A theoretical or merely speculative conflict of interest will not invoke the protections of the Sixth Amendment. *See United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992). Indeed, as a threshold matter the defendant must demonstrate that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *Beets v. Collins*, 986 F.2d 1478, 1486 (5th Cir. 1993) (citations omitted).

In *Mickens v. Taylor*, 535 U.S. 162, 163 (2002), the issue before the Court was the quantum of proof a defendant must offer in order to demonstrate a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known. The Court noted that the standard for determining the Sixth Amendment ramifications of conflicted counsel had been applied to all kinds of "alleged attorney ethical conflicts." *Id*. The standard for assessing counsel's effectiveness has been applied not only when there is a conflict rooted in counsel's obligations to former clients, but also "when representation of the defendant implicates counsel's personal or financial interests, including a book deal." *Id*. *Mickens* ultimately held that to void a conviction, a defendant must

32

establish that the conflict of interest adversely affected counsel's performance. *Mickens*, 535 U.S. at 174.

Here, West cannot sustain his burden of proving a total breakdown of communications between himself and his attorney undermined Mr. Fazel's performance at sentencing. With regard to the quantum of proof a defendant must adduce to sustain a finding of a total breakdown of communications, the Tenth Circuit has observed:

> "To prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible."

*United States v. Williamson*, 859 F.3d 843, 860 (10th Cir. 2017) (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)). At best, West can offer nothing more than a disagreement regarding strategy, that is, what evidence to offer in support of an objection to reduce the amount of loss and the amount of restitution. *See e.g. Deering v. United States*, 219 F. Supp. 3d 283, 290 (D.P.R. 2016) ("A mere disagreement between lawyer and client rarely amounts to an actual conflict sufficient to trigger the [Sixth Amendment's] protections."). West had already sworn that the amount of loss exceeded $3,500,000. Nevertheless, counsel assumed the

33

daunting task of overcoming the presumption of verity attending that confession. To that end, counsel offered the best evidence he had to reduce the amount of loss and advanced an alternative argument that West should be awarded a reduction for acceptance of responsibility and/or the imposition of a sentence below the applicable guideline range. Thus, West can demonstrate neither deficient performance nor prejudice arising from counsel's representation. The Court should issue an order summarily denying West relief on this ground.

## VI.

## <u>CONCLUSION</u>

The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule

56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson*, 477 U.S. 242, 248. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict. If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Id.* at 249.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the resisting party to present affirmative evidence to defeat the motion. *Anderson*, 477 U.S. 242, 257. All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "The court

need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Under the Rules following Section 2255 Proceedings, the record may be expanded to include materials that pre-date the filing of the motion for relief under 28 U.S.C. § 2255 affidavits. Rule 7, Rules following 28 U.S.C. § 2255. The record in the case-at-bar should be expanded to include all of the materials filed in the criminal case.

"A district court need not hold an evidentiary hearing to resolve ineffective assistance of counsel claims where the petitioner has failed to allege facts which, if proved, would admit of relief.... If on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary and we may affirm.'" *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) (quoting and citing *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994) and *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)), *see also*, *United States v. Acklen*, 47 F.3d 739,743-44 (5th Cir. 1995). The court of appeals has instructed district judges to employ a two-step inquiry:

> First, the district court should examine the record in the case as supplemented by the judge's "personal knowledge or

36

recollection" to determine if the record conclusively negates the facts asserted by the movant. ... Second, the district court should decide whether the movant would be legally entitled to post-conviction relief if his factual allegations are true (at least those allegations not conclusively refuted by the record or the judge's personal knowledge or recollection. ... If the district court resolves these two prongs in favor of the movant, "§ 2255 requires it to conduct an evidentiary hearing based on those factual allegations which, if found to be true, would entitle the petitioner to post-conviction relief."

*United States v. Ochoa*, 127 F.3d 34, 1997 WL 589346 (5th Cir. 1997) (unpublished) (citing *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979)). An evidentiary hearing is not required. This Court can resolve the issues on the record before it including all of the materials filed in the criminal case. The government is entitled to an Order granting it summary judgment and denying West relief under 28 U.S.C. § 2255.

Before West can perfect an appeal from an order denying him relief under 28 U.S.C. § 2255, he must secure a certificate of appealability. 28 U.S.C. § 2253. "A certificate of appealability may issue pursuant to 28 U.S.C. § 2253(c), 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *United States v. Ratliff*, 719 F.3d 422, 424 (5th Cir. 2013) (quoting *Slack v. McDaniel*, 529 U.S. 473, 481

37

(2000)). Here, reasonable jurists would not debate the correctness of a holding that West failed to make a substantial showing that he was denied a constitutional right.

In light of the foregoing, the government prays that this Court enter an order summarily denying West relief under 28 U.S.C. § 2255.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division


/s/ James L. Turner
JAMES L. TURNER
Assistant United States Attorney
Texas Bar No. 20316950
Federal ID No. 1406
Attorneys for Respondent
1000 Louisiana Street, Ste 2300
Houston, TX 77002
(713) 567-9102

## **CERTIFICATE OF SERVICE**

I, James L. Turner, hereby certify that a true and correct copy of the foregoing Response to Daniel Nathan West (West)'s Motion for Relief Under 28 U.S.C. § 2255 and Motion for Judgment on the Record has been served on July 18, 2019, via certified mail, return receipt requested, addressed to:

Mr. Daniel Nathan West
Reg. No. 97691-379
FCI Coleman
P.O. Box 1031
Coleman, FL 33521

/s/ James L. Turner
JAMES L. TURNER
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Respondent, | § | |
| | § | Case No. 4:15-CR-515 |
| v. | § | |
| | § | Case No. 4:19-CV-1117 |
| DANIEL NATHAN WEST | § | |
|     Petitioner. | § | |

## ORDER

It is hereby ORDERED that the United States' Motion for Summary Judgment is GRANTED and relief under 28 U.S.C. § 2255 is DENIED.

SIGNED this _____ day of _____ 2019.


_____
UNITED STATES DISTRICT JUDGE

40